My feeling about the last case is that the people who left the courtroom didn't, when we were doing the contraception issue, didn't realize that this case, the next case, deals with $60 million, $70 million dollars. They're not in it for the money. You stop to see. And as to this next case, one of my... I'd like to ask for a transcript of the last case. I'll be 24 years. If we get a transcript in the last case and split the cost, we've got two really, really deep boxes there. There shouldn't be any problem paying for it. Counsel, Mr. Rasher, can you communicate with your co-counsel and ask someone to contact the clerk and get a transcript that the cost would be split? Okay, thank you. One of my law clerks said this case, that's coming up now, should be a movie. Maybe. Who's going to pay Zalsberg? How about Diddy to be there? Does that make sense? Mr. Burke, you still don't manage to get Zalsberg to participate in this civil case? Wizardry, total wizardry. May it please the court, I am Barry Burke. I am counsel for the appellants Roy, David, and Joan Langford. With the court's permission, I would ask to reserve five minutes of our time. At the outset of this case, the government engaged in conduct that Judge Davis found to be unconstitutional, objectively unreasonable. You mean the seizure? The seizure and the refusal to go to court and give due process. And that's not cross-appealed, is it? It is not. It has not been appealed by the government. You did say during the district court proceeding that forfeiture would be a way to resolve this. A forfeiture proceeding would be the way to resolve this, and there was a forfeiture proceeding. Well, our principal argument is that the government's conduct, which the judge also found to be contrary to the bedrock principles of justice on which our government was founded, was exactly the type of conduct that Congress sought to prevent and discourage by enacting CAFRA, which provided remedies to citizens like the Langfords so they wouldn't have to litigate for over two and a half years to force the government to go to court. And what Congress said is, we are concerned about the abuses of the forfeiture laws. So what we're going to do is we're going to give citizens like the Langfords the ability to make a seized asset claim on the government when they seek to keep property without going to court, a nonjudicial forfeiture. And the government then has to go to court within 90 days, and if they don't, the penalty will be they can no longer forfeit. Ninety days of what? After they receive the seized asset claim. The claim here would be the Augustine letter? No, and following the Augustine letter on September 9th, the Langfords actually submitted a formal seized asset claim to both the Mint and the Treasury, complying with the requirements of Section 983 in the Statute of Rights. So the argument is that the Treasury is not one of the agencies that can do forfeiture. Well, actually, what the government argues is the Mint is not one of the agencies that can do forfeiture, but Your Honor is absolutely right to note the Treasury, because as we stated in our briefs, it was the Department of Treasury that was involved in making the decision, contrary to the recommendation of the three agencies with experience in forfeiture law, that they should go to court as required. The Treasury Department made the decision. And the Secret Service actually took possession. Exactly, and the Secret Service has the authority as well. They took possession and held them until the Treasury Department instructed them to give it to the Mint, because they weren't going to go to court as the three agencies with forfeiture experience recommended. So the government says, why should we do that? It's our coins. They never were legally issued. It belongs to us. Why should we go to court to have them tell us it's our coins? Aren't they right? They are right, Your Honor, and it's a very good question. They were never legally issued. Well, the factual dispute is whether they were in fact stolen, and that's the government's argument. They were stolen property. And those are ours, and we have very good records of where all the coins went. We just saw the fact that one went to King Farouk. I haven't figured it out yet. What happened in 1937, I guess? Well, I can tell you, Your Honor, I've been involved in this case for 19 years because I represent Mr. Fenton, and there have been two books written about it. Excuse me, who's going to play you in the movie? That's a good question. Thank you, Judge. But the reason why it's been hotly contested for 20 years is because the evidence isn't that clear. But, Your Honor, to hit on the exact point, the government wants to say, because we really, really believe we were right here, we didn't have to comply with capital. We didn't have to report to say we were right. We could just keep the property. And that's what's always wrong. It's not a property, says the government. It doesn't matter because, again, there's no basis in the law in cap or otherwise for self-help. The law discourages it because it allows the stronger actor to overpower the weak actor. You've got the language of the statute that talks about thing of value of the United States. The forfeiture, I mean, isn't that your answer, that the forfeiture statute actually, definitely, by its language, does apply to something that is property of the United States? I agree 100 percent, Judge. Thank you. 18 U.S.C. 641, that's in there, and that's what it says. And even further than that, I would say, any time in the past when the government wanted to keep property because they really believed they had a right to, because it was used illegally or somehow violated the statute, they would just do it. They would just keep it. And what Congress was concerned about is how do we stop this vast power? And it's a case like this where the government really wants a property, really thinks their position is strong, which they're saying, we're going to deny a claim and ordain in court. Fortunately, for the language, they could battle for two and a half years to get to court. But it's, CAFRA is seeking to attach penalties for the claims who can't do that. And the government has to comply with this law. It's not enough to simply say, well, ultimately, they'll file the forfeiture law, because then the government is never incentivized in order to comply with the law. That's why CAFRA says, and it's described by Casella, who both the government and language cited the authority on forfeiture, that it was the principal reform to say that when the government violates the 90-day requirement, they lose the right to forfeit that property. I'm assuming the government is going to urge that Judge Davis got it right, that there really is a notice provision in the statute, and since there's no notice required to be given or no notice given here, then it doesn't apply. Where do we go with that argument? Good question, Judge. I'm not going to say anything about what that notice has to be, only that it is notice. Again, Mr. Casella says there's no requirement. It's just notice that the government intends to keep the property and is not going through a judicial forfeiture. That was done. But the statute, the way the statute is structured, I'm surprised your argument here, I'm giving you softballs here, I'm surprised your argument isn't that that notice provision is, that the seized asset claim provision is not dependent upon the notice provision. In other words, it's a separate provision. So notice or no notice, if you file a seized asset claim, doesn't that set in motion the 90-day requirement? We make that argument as well in our papers, Your Honor, and that is our position, and it's clear that that's what was intended by Congress, but also the language of the statute, because what 983 says is that if you can make a filing of a claim, either after notice or after the seizure of the asset, 18 U.S.C. 983E in fact provides that if you are someone who has a claim and you're claiming that the government forfeited the property non-judicially and you object to that after the fact, you have to prove two things. One, that you didn't receive notice. Two, that you weren't aware of it. So in this case, if the landlords did not file their seized asset claims, the government could turn around and say they're forever barred from seeking the property. So clearly that has to be on the 90-day list. Let me do a result, and I know there are problems with the denaturation from your point of view, and we can get into that. 805, 803, 316 problem. What do you do with the fact that the declaratory judgment is there, and there's a judicial finding based upon the bench trial that occurred at the same time as the jury trial, coming out of the declaratory judgment action that the coins are in fact property of the government that they were stolen. Did you answer that 641 also? It doesn't really matter because 641 is still sitting there? Well, there are a few different questions. So one answer is the judge actually, it's a little confusing from the record, but the judge actually did not make any factual findings, and could not make factual findings, because he agreed with the law that says once the jury found the fact, he would simply apply the jury's finding to a collateral principle. So the judge did not make any of his own factual findings. For the declaratory judgment issue, we think, which is relevant, certainly on the CAFRA issue, we have two points. First, in this case, the government clearly cannot seek protection or refuge from the declaratory judgment. What prejudice did you suffer by the district court allowing the declaratory judgment claim to go forward? Well, there are really a number of different issues of prejudice. First, if this court does agree with our understanding of CAFRA and says that the judge made a legal error and should have found the government violated the 90 days and therefore were barred from seeking forfeiture of the property, the government strategically, as the judge found,  either when they wanted to keep the property or when they were mandated to in response to our complaint. But is the burden different to Judge Glover's question? Declaratory judgment action. So they had a right to declaratory judgment. Is it that different from what they would have had to show under forfeiture? No, but if they would have sought to file it after the ruling on CAFRA was that the points had to be returned, it clearly would have been too late. Summary judgment would have been granted. And in fact, the government did wait until after the summary judgment was granted in favor of the landlords on the Fourth and Fifth Amendment claims. And under the Curidan case, under the CMR case, you look to, is that delay undue? And here we have four years from the time of the seizure over two and a half years from the time the landlords filed the complaint. We have the judge's factual finding. So you say that's the prejudice, the four-year delay? The delay and the requirement of the landlords to litigate over that period of time, absolutely. In addition to that, the judge found that the motivation of the government, as a matter of fact, sounded in strategic choice. And in the Curidan case, certainly you know, Chief Judge, you keep being on that panel, you look to the motivation of the parties, and here the motivation clearly was strategy. We don't want to make a declaratory judgment action because we don't want to give the landlords their day in court. You mean you don't want to give a forfeiture action because you don't want to give them their day in court. We also don't want to file a declaratory judgment action because they made the decision to do both. Because you may have gotten it through an irregular source. I mean, you may not want to put that forward. Mr. Swift, where did Mr. Swift get it? Well, that is the issue to be litigated. And what we believe, we were able to show the government brought this case based on a presumption, that is the first paragraph in their complaint, which was wrong. And that was that after President Roosevelt issued a decree on March 5th, temporarily stopping the payout of gold coins, that nobody could lawfully get gold coins, so that since these coins weren't minted until March 15th of that year, therefore they had to be stolen. We were able to show at trial that in fact there was a window... They could have filled it out of the mint. No, there was a window of opportunity where the Department of Treasury, under the President, authorized the payout of gold coins for a period from March 7th until April 12th, in gold for gold exchanges. We were able to establish that there was an open bag of 33 double eagles in the cashier's office who made those exchanges. We were able to show... That was Mr. McCann or somebody. Actually, Mr. McCann's predecessor. But that was unsuccessful in the declaratory judgment action, correct? Well, actually in the forfeiture action, because the judge simply applied the same factual standards. But you're right. But the reason it was unsuccessful, we submit, is because the government was able to present hundreds of pages of Secret Service reports presenting hearsay, double hearsay, and triple hearsay that made this case like a TV episode of Law and Order or CSI where they presented a dramatized, seamless version of the event that happened in the 1930s and 1940s. And the language in their counsel could literally do nothing other than watch it like it was a TV show, because we couldn't cross-examine the many... But isn't that the result of... I know you take issue with how 80316 applies vis-à-vis 805, but isn't that the natural result of the entire scope of 805? Once you have that hearsay exception for ancient documents, whether or not 80316 was properly interpreted, that's there in 805. You're going to have that problem. Well, only if there's a separate hearsay exception for each of the levels of the hearsay. Judge Davis was the first judge in the country to ever rule that 805 does not apply to 80613.  despite the Seventh Circuit and the Hotchkiss case and Judge Du Bois case, relying on one commentator who's never been quoted before by any court, which is far outweighed by the over half-dozen well-known commentators who said you have to apply 805. Part of that's because of Hicks, I think, in the commentary to the 2014 commentary, I think it is, the Federal Practice Manual says that Hicks is wrong, he decided. Well, there were questions about Hicks, but I believe that the courts that have interpreted 805 as well as applying it to 80613 as well as all the commentators recognized that there was nothing in the commentary that intended to say that the ancient document rule simply legislates out 805. Which I might add, it's 20 years. I mean, when did 20 years become ancient? Well... Judge... I don't like that. Judge, I understand that after spending nearly 20 years on this case, I appreciate that as well. But let me just say about that, the issues that were being investigated were the exact issues of this case. You could make that argument, even if this stuff comes in under 80316, you still argue that to the jury. So maybe it's all admissibility means that you can consider it. It doesn't mean that you have to consider it. And you argue that the probative value is de minimis because of the circumstances under which that evidence was made. The reason that gave us a little relief is the government stood up on summation and they argued what is more likely than not? That the Secret Service got it right? Which is an argument we obviously disagree with. Or that Mr. Schwick got these coins lawfully. And the reason they made that argument is because the judge admitted it was true. And because Mr. Schwick didn't get it lawfully as well. No, because that is the factual issue. And in fact, the Secret Service never made that finding. The Secret Service said that they could never, an exact quote from the Secret Service document, they said the investigation into the 10 double eagles did not, quote, conclusively establish when, how, or by whom the coins found in circulation were taken from the Philadelphia Mint. Although the evidence pointed very strongly towards George McCann. And what we said is when the government was able to present testimony at great length about mint employees who said they saw George McCann going through the coins with his hands and he was a magician. By presenting people who were being investigated for whether they had a role in removing the double eagles, they pointed the finger at Mr. Schwick and reported second hand, third hand, sometimes fourth hand stories. What difference would it make from your perspective? Your clients, Chloe, were now around and they didn't know McCann. In terms of the requirements of forfeitures that apply vis-a-vis the government in 641, what difference would it make? They're not the thieves. No one's suggesting that they're the thieves. The government under 641 had to prove these coins were stolen. And I can tell you, Judge, one of the things that happened here is the government litigated this issue for seven years in this prior case. And when we were going to trial in this prior case, we were on the eve of this trial because of this license to King Farouk. And the government settled that case. And in that instance, Caffer didn't apply. So in that case, Mr. Fenton had the burden of proof to prove they weren't stolen after the government settled the problem. It wouldn't even apply if they were. The reason why the government... 7.5 million, I guess. Exactly, the largest. And it was done collaboratively as part of the settlement. The reason why the government did not want to file for Caffer was to violate the law. And the reason why they tried so hard to not only deny the landlords their Fourth and Fifth Amendment rights, but their Seventh Amendment jury rights to the declaratory judgment claim was because they knew the difficulty they would have proving this case. And the only way they were able to do it is by telling this dramatic story through these Secret Service reports that came in almost verbatim. I mean, on that theory, you could have an old book and just have it read to the jury. But the critical issue is whether it goes before the jury. Because if it does go before the jury, it goes simultaneous to the forfeiture claim in the event that your honor did not grant our relief under Caffer and simply granted a new trial. Because, without question, the only argument the government has as to why a jury right doesn't attach is because they claim it's not replevant. And the only reason they claim it's not comparable to replevant is because they violated the landlord's right in seizing the coins. And that's a common law. Whether it would be the landlord's filing a replevant claim so it's an adverted class action, which is just an adverted action. You're arguing the common law, too, should not be federal, but the state common laws would not be. Well, the first argument is under federal or state, replevant, you have a right to the jury. And you have to look to a replevant because the landlord's reserved all their rights. And the government acted unconstitutionally. So the answer is yes to the court. Yes, but you look at the pattern. You've heard all these questions before, haven't you? You've heard all these questions before, haven't you? You answered the question quick. Well, let me just tell you, and I know you didn't give me the same note that we may not be following the plot. No, okay. Thank you. Thank you very much. The answer is that so clearly is, under Owens, Illinois, is what is this case akin to? And it's the government seeking to recover their property, a classic replevant action. And if they had done what they were supposed to do and filed declaratory judgment when they wanted to keep the coins, it would have gone before a jury. If they had filed it as a counterclaim, it would have gone to the jury. And now they're simply coming up with an argument that, well, technically, we're going to come up with something new. We're going to come up with a federal quiet title action. There's never been a court that found a federal common law quiet title action because under Pennsylvania law, a quiet title action only applies to real property. So what really is happening here is a replevant action. So there's no basis in law to say that this declaratory judgment, which, again, the government only gets to after having evaded the dictation of CAFRA, violating the landlord's constitutional right, taking the coins without following the law. That is the only reason they say replevant doesn't apply. Can I ask you a question? Can you stop? Yes, yes. I'm going to check for you. Do you disagree with the government's contention that the civil service report that you object to as containing multiple levels of hearsay were not prepared in anticipation of litigation? Well, the question is... No, the question is what I asked. The question is what I don't... Your Honor, that is the question. And I don't agree with the government because what was being investigated is whether or not these coins were left illegally, whether they could be seized, whether there could be a criminal prosecution, et cetera. So the people being interviewed... Now, Judge Du Bois in the Stomolkas case said the reason why you can't have this hearsay is because you don't have the same assurance that the person who heard the statements got it right, that there wasn't a miscommunication, that there wasn't a mistake. Whereas here you have the additional reason that people who worked at the Mint were certainly incentivized to say either they weren't negligent because they could get fired or they didn't do something intentionally wrong. And we have plenty of evidence of negligence that they didn't follow the rules. They wanted to point the finger. Exactly. You also had the people who had the coins that had a lot of intent to point the finger at a third party to say they didn't do anything wrong. You also had a lot of intent from the senior Mint officials who were quoted as saying the coins could only have left corruptly because they would have otherwise not followed their jobs if the procedures were such that they were given out during this gold-for-gold exchange which would not have given the government a basis to recover the coins. But didn't they have records to track how many coins were actually given out in the gold-for-gold exchange and they negated that process? They negated it. They reduced it. I'm glad you asked that, Judge, because if in fact, I submit, if in fact this case was about those records, that presented a problem for the government because the records themselves, the only records that were required to be kept and were kept in meticulous typewritten fashion were not required to keep track of the date of coins, only the denominations. And we agree that coins of a different date clearly could have gone out and did go out. There were these separate handwritten notes that nobody knows why they were kept, there were no requirements, there were no procedures that the government relies on because those had dates. Now what we were able to show with regard to the 33 double legal in particular, the government had Those are the ones we're talking about. Those are the ones we're talking about. The Mint had very clear procedures of how they had to treat these coins for purposes of assaying, which means simply assessing the coin in a variety of different ways. And we were able to show and the government couldn't dispute it that those procedures were directly violated because they were too hard to follow. And that's what left this empty bag, I'm sorry, this open bag of 33 double legals at the cashier. At the cashier. Well, and in fact, anybody who might have interest in something that has historical value and says, you know what, the Mint, maybe more gold coins aren't going out, I'm going to take advantage of this provision that allows me to exchange gold for gold, particularly if I'm a jeweler. Here's some gold, I'd like those gold coins. And there's nothing that would have prevented that. And so what we submit is we think the evidence on the record is very unequivocal and if anything shows that they didn't follow this and can't track the coins. Then we have an opinion that says that secret service reports are trustworthy because they were prepared by law enforcement. Far in front of this paper. Written by Judge Manson. Right. Well, the government, well, a couple things about that. We're not disputing the first-hand observations of the secret service agents. And that's all those principles refer to. And in fact, the government didn't argue that these come into as exceptions in public reports under 803A. They don't even argue that. But if they did, they'd have a problem because there were no factual findings based on the language I just read. So the government But these were interviews of other people. They were so extensive. People of the Mint who were being quoted throughout. There was the new cashier who said he spoke to a visitor of the Mint. A separate one. Mr. Silver. Who supposedly asked him to do a corrupt deal similar to what he did with Mr. McCann. Right. So now we have that's double hearsay. That's being presented. Then we have someone who says that Mr. Swit's partner claimed that he didn't know Mr. McCann. But another separate individual told somebody else that they saw Mr. Swit's partner speaking to McCann. Then you have the Mint officials describing all these things in second third-hand ways to suggest they couldn't have gone out the front door but went out the back door. And we literally couldn't impeach we couldn't cross-examine any of his people because they weren't there. And there's no basis that would allow this extraordinarily broad holding that allows him for the truth. When the government stood up and said who do you believe? The Secret Service. And all their quotations of all these people that we couldn't cross-examine were Mr. Swit. There was nothing we could do because those people weren't there. Now if the government wanted to rely on the first-hand observations consistent with the ancient document rule they certainly had some evidence to rely on. And we would have arguments around that. But what they can't do is present the seamless dramatic tale through nothing more than the Secret Service reports. And they did it. You said this could be a movie or a book. They did it through Mr. Tripp whose expertise was he wrote a book on these points as did somebody else based on the other case. And what he simply did is read into the record the most juiciest thing he said in the record. Oh this is a good one. Or Mr. McCann said to be a magician. Oh you're going to love this. Or Mr. Swit lied about this and lied about that and he told this compelling story. He's in the courtroom today. He has a lot infested in this case. And he told a very compelling story. And the judge admitted it not just under 703 which would have been an error but he admitted it for the truth of the matter. And these hundreds of pages of statements and the government tries to say well in our summation we only relied on a few of them and then simply said believe the Secret Service. Well they spent days having Mr. Tripp literally read into the record not once but twice because after he read in all these juicy tidbits the second third and fourth and hearsay he then had a chart that went through it. They connected it all together if you believe these stories and as he says did in his book but the Secret Service didn't do to try to suggest Mr. Swit had to steal these coins. That's why you argue that evidence of Swit's arrest for possession of non-1933 double eagles was not relevant and shouldn't have been let in. Yes. And doesn't that arrest show that Swit and his descendants would have a motive to conceal the coins that issue? It actually did not because ultimately the treasury had a numismatic exception for gold coins and keep gold coins that have numismatic value. I mean they can now be sold and the government's sole argument is not that it violated the gold act but that they were illegal, that they were stolen and what it allowed the government to do this is a 403 analysis the court knows what it allowed them to do was through Mr. Tripp and directly they said that Mr. Swit was unpatriotic because they were able to present the argument that the reason for the gold act was so people would be good citizens that acted patriotically and that Mr. Swit acted unpatriotically by not doing it and then he later kept these 33's to thumb his nose at the government for being arrested and to show what a bad citizen he is. But the court gave a limiting instruction there as to how to deal with this to the jury and we trust that juries can follow that. To be clear the judge did give a limiting instruction on two things on the arrest and the Barnard not the secret service that was being considered for the truth but the judge also violated 703 in which the presumption for 703 is it can only come in to support an expert's finding if the probative value substantially outweighs the prejudice and here Mr. Tripp the expert didn't rely on two things the Barnard decision he simply said what the judge found in the Barnard nor did he rely on the arrest he just said it but what that allowed the government to do by it being admitted in support of the expert's opinion is they could stay in summation just as they did with the secret service report what is is it more likely that the secret service got it right and Judge Barnard in 1947 got it right or that Mr. Swick got it innocently so the part about the Barnard case and the arrest whatever you say is it clearly was a violation of 703 and I would say to look at that Chief Judge McKee I know you wrote the decision in Penelope Ford in 2008 that made clear that rule 703 well the part that we like is rule 703 establishes the presumption against disclosure and by allowing it in and not just could have it in for the limited purpose that I hear your honors talking about that was addressed by the judge's charge but the judge also said you can also consider it in connection with the report and that's what we object to as a violation of 703 thank you very much sir let me ask did you see these coins I did because I talked to the district judges who are here now were allowed to see it but they were being guarded by the marshals and they said they were the most beautiful coins they've ever seen do you agree they well I have to confess I am not a coin collector so my expertise is limited to 33 but I will tell you there are two of them in the Smithsonian yeah I know the one that my prior client and the government sold those on tour frequently there are two in the numismatic museum yes where are they now Fort Knox well it's a good question because one of our concerns is one of the things the government did after saying they're not going to violate TAFRA is they took them on a tour to show them places and at various different points and they did not keep them in Fort Knox one of our concerns that we've expressed to the government is that they should be maintained based on our hope that the landlords will get their property back well if they're not you have some appraisal of the market value so if they're not there if you were to win the case $10 million that would be the rate I will say the $7 million value to be clear was the value when it was thought there was only one one yeah right so if you look to other coins the value would be substantially substantially less and I should say for example I'm sorry the 33 since you asked the 33 Eagle which is a $10 gold piece which was lawfully issued because it had been minted before Judge Roosevelt's order the mint records only show five of them being released but in today 15 to 25 according to government's own experts trade freely and we think that's further evidence of these mint records how much do they stand for it's a good question I don't know again I don't know the answer offhand but substantially less than that to get the number out there okay thank you thank you thank you okay this is the we're putting off hearing from you the in or I've been looking forward to it I appreciate taking off the I can't talk as fast qualified I'll give you as much time on behalf of the government and the this is a fascinating case of course Mr. Burke and the claimants have always had the approach in this case that the best defense is a good office and so what we hear here over and over again is it's unconstitutional it violates bedrock principles I hear CAFRA requires certain things and the government didn't do it and the fact of the matter is two things one CAFRA does not apply and second even if it did apply the second point I'll get to is that the government has other remedies such as the declaratory judgment why doesn't it apply because as Judge Davis held in his very clear and careful opinions CAFRA applies to a nonjudicial forfeiture under a civil forfeiture statute this was not a forfeiture the government said very clearly the Mint said when it recovered possession of its property this is our property it has always been  property the government has multiple interests the government has interests as a law enforcer and also as the owner of property and what is being forgotten in this discussion but I'm now going to address it as much length as I can is the government acting here as the owner of property there is a seized asset claim because you seized something and someone else contends it is theirs and that person starts a proceeding how is that not the way this is supposed to work it was given with a letter that specifically says we claim it did your honor I have so many points to address and I'll try to answer your questions at the same time the point about a seized asset claim is that an individual cannot start their own forfeiture I can't present a seized asset claim to the government and say that laptop computer is mine initiate a forfeiture proceeding let me try to break this down the property clause of the constitution says that nothing in the constitution shall be construed as to prejudice any claim of the United States the leading decision was offered by judge Slovener another interesting case involving a bell of a confederate ship wonderful case wonderful case the ship was sunk in battle off the coast of France this bell traveled this bizarre path sold for bar debt people came from all over France to watch they knew the battle was taking place to watch the battle they sailed out in yachts to watch the naval battle during the civil war this antique dealer over 100 years later finds the bell establishes its provenance brings it to the United States and the U.S.  seizes it. It was offered to the U.S. Navy before and they didn't want it and then all of a sudden they see that it's in something that goes around that says you can buy this you can buy this and then all of a sudden they wanted it. They didn't ask for it. I said you would remember the case. And in Steinmetz what this court held was that the property clause has been interpreted to mean that the United States cannot abandon its own property except by explicit acts. Steinmetz I'm going to get back to when I talk about ancient documents. Your Honor, I'm going to get back to when I talk about ancient documents. The important point I'm trying to make is that the government does not abandon property of the United States. In a situation like this where you have property that was stolen here's the point, it cannot be that when the government property is lost from its place that the government has to initiate a forfeiture action. No, when the government seizes something and someone else claims it and files a notice, a seized asset claim specifically pursuant to the statute, they have then started the clock running for the government. This is the way in which the government obtains the property. Let me give you an example. This is the first part of our brief. We begin with the proposition that the government plays different roles. Let me use the example of lost property. Say a postal company  lost property. The government then locates it and takes back the truck. The government in that  cannot file a forfeiture claim. There is no crime. They don't have to, but the person who claims ownership of the truck cannot file that. The forfeiture statute does not apply at all because there is no predicate. There are many instances. That doesn't mean that because there is a crime here, that doesn't mean it precludes the government's other options as property owner. The government has to file a forfeiture claim. Putting that aside, these coins have come into our  We have authenticated them. We realize that they are ours. We are keeping them. Any citizen can keep them. These coins have come into our possession. They were given the coins to ascertain whether or not they were legitimate under a reservation of rights. This court ordered that was a violation of the Fourth Amendment right. The court very carefully and correctly did not hold that this was a violation of CAFRA. The court correctly held that this was a violation of the Fourth Amendment right. The court held that CAFRA did not apply because no forfeiture proceeding was initiated by the government, but that there was a Fourth Amendment violation and gave them the remedy they asked for, which was compelling us to file a forfeiture claim. The effect of it was it shifted the burden of proof. So instead of the claim and having the burden we had, we accepted that. I still don't understand how when you received the seized asset claim, how you had the right or the ability to not file the forfeiture proceeding within 90 days, which CAFRA requires, in the absence of which you lose claim to the property. I'll try it one more time and then I want to get on to subsidiary arguments. This is very important. Again, the government does not always have to file a forfeiture claim when it has other remedies. But it has to file it if there is a seized asset claim. Let me address that point. That's not what the statute says. The statute says that an administrative forfeiture proceeding is initiated by the government providing notice of the seizure. It needs to do that within 60 days. It does not say that. It says in any nonjudicial civil forfeiture proceeding with respect to which the government is required to send written notice. That is totally distinct from a 2A which talks about the fact that after a seized asset claim is filed, the government has to file a complaint. The seized asset claim, the time for that runs from the government's notice that it has initiated an administrative forfeiture proceeding. The issue now before the court that your honor is raising. I believe there certainly is in the statute and certainly in the case law. If the remedy to that becomes a new trial, you are basically in a situation where the statute applies. The remedy would be to retry the forfeiture proceeding whether or not the statute would initially have applied. That is essentially what happened here. They got their trial.  be a new trial on the same structure. Presumably. I want to talk to that. I have much more to say about these issues. I don't believe I convinced them. I did want to address the issue. The ramifications of this are very significant. They go well beyond this case. There is one precedent they cite about vacated decisions. No authority holds that. The ramifications of that would be very significant. It is completely inconsistent with the structure of the statute. The person who gets notice can file administrative claims. Notably, the government can get extensions of time to give that notice. Very often we are not talking about coins from 1933. We are talking about criminal proceeds. The government needs time to figure out how to do this. You are proposing a situation where the government can hold someone who claims an interest in property hostage. If you are saying the notice by the government is the first step without which someone cannot file a seized asset claim, you are saying the government controls this situation and the person is out of luck? This is what I was about to get to. It is subject to judicial authority. The government has 60 days. The agency can extend that by 30 days. After that you have to go to court. You can get multiple extensions up to 60 days each. We do this all the time with judicial approval. Our first position is no notice was required because we did not initiate a forfeiture. I will come back to that in a second. The point I am making is the statute is carefully constructed so the government has the time it requires the judge to do the investigation and provide the notice and then the claim is filed. Does this issue come up? It does. I will use money as an example in a minute. The idea that somebody can file a claim and that starts the 90 day clock to defeat this statute. It cannot be correct that an individual can put the government on a clock that the statute does not. That is the problem with that argument. This happens when an asset is seized by the government. That is not always the case. The government wants it forfeited because it is the proceeds of drugs and then they file the notice of the claim. It happens every day. Let me give you the standard example. Somebody comes in the airport with a suitcase that has $100,000 in cash. We have no idea where that is from. It certainly doesn't look like it passes the smell test but we need to figure out what this is. The government seizes that money. It has 60 days to get it back. These things happen all the time. What has been proposed by the claimants would completely defeat that. That is why we have to think about the ramifications here. The other problem is we would be bombarded by litigation. You can only start to imagine. All the prisoners who say that TV set on the wall is mine. You have 90 days to file a judicial forfeiture against me. We can go on and on with examples. We have a statute here that is very clear. There were repeat letters saying we are keeping it. The letter said the opposite. We are not forfeiting this. We have read Barnard. This has always been our property. This is not a forfeiture matter. That is why it acted as it did. That is the answer to the first part of your question. The second part of this is so important. Whether or not we needed to use CAFRA, can we do anything else? The claimants are making a startling proposition that would have huge ramifications. In a matter that forfeiture happens to apply to because there are criminal proceedings as opposed to the lost property. In a matter where there happens to be a possibility of forfeiture, the government can only do forfeiture. Therefore, no declaratory judgment action. We are stuck. If we miss these deadlines, we are done. That is a startling proposition. It puts the government as property owner in a worse position. You want to talk about what is unconstitutional, that is unconstitutional. It is saying that if the government misses these deadlines, it cannot obtain its own property through another judicial action. That cannot be right. Let's go back to that example of the guy with $100,000 in cash at the airport. That is a matter in which the government is only acting as law enforcer. It is not its money. Our only option is forfeiture. If we blow the deadline and get the notice pushback, we can get the 90-day pushback. That is one of my many back-up arguments. I think it is pretty clear that that is the direction. I don't agree with that. They cite two cases that provide no reasoning for that proposition. We do not agree with that, nor do we read the plain language of the statute. Let me finish up with my $100,000 example. Say a third party shows up and you say that $100,000 in cash at the airport is mine. That person took it from me wrongly. That third party obviously can file his own claim against the guy for the money even if the government has messed up on the forfeiture. In this case, we are that third party as well. We have our claim to this property as ours. The notion that we cannot bring a declaratory judgment is just astonishing and based on no precedent. That's the problem that the claimants face. Their appeal is based on the procedures involved. They need to win both. They need to prevail in convincing you that there couldn't be a forfeiture and there couldn't be a declaratory judgment. That's a remarkable proposition. If he is right on the hearsay question, it's a new trial. That's a really tough case to prove. Your Honor, we disagree. What you heard from Mr. Burke moments ago and your very quick, fast, compelling argument, what you heard was his jury argument. He told you things like we were able to show a trial that there was a window of opportunity. He told you there was this unequivocal evidence of what they proved. The jury unanimously rejected that argument and for good reason. Not because of the secret service records. If you look at the government's closing argument, you will see that virtually all of it relies on the records that are not hearsay. When you read his opinion, he is not relying on the secret service records. What proved this case and what utterly defeated what Mr. Burke just told you were the records of the men. The records of the men which are not hearsay showed that not a single double eagle left the ball. He told them to get his if not one left. How did King Farouk get his? Mr. Swit was the only source of these coins. He sold them. He sold five to another dealer. I believe one of the McAllister coins was sold to this man who at the time in the 1940s was a very famous coin dealer advertised nationally on radio. Everybody knew who he was. Every coin that the secret service ever found including the 10 sitting at the bottom of their safe deposit box traces back to Israel. That itself tells you something is wrong here. What also tells you something is wrong is the records themselves. The records are meticulous as Judge Davis explained. He says they were not. He says if you look at them they were handwritten. They haven't raised a sufficiency claim. They haven't asked you to study the evidence the way Judge Davis did. They can't prevail on that. I'm going to talk about why the stuff does come in. The first thing I'm saying is this case relies on the fact that those records did show down to the last coin that this notion of a bag and a window did not exist. Every coin was accounted for from birth to death as Judge Davis said. The only coins that left went through SWIFT. None of this is hearsay. We can't say the admission is necessarily harmless. You may say there was sufficient evidence but it's very tough to say the jury wasn't swayed by this at all. We can't really do that. I don't agree. If you look at the closing arguments and look at the judge's analysis of it, I don't think that's fair. Let me talk about the admission of the evidence. First, these ancient documents are invisible under rule 80316. Judge Davis wrote another one. You're younger than I am. 20 years doesn't bother you. 20 years bothers me. I first appeared in front of this court more than 20 years ago. I may have been there. I'm sure you were. The simplest thing you can say about it is to read the text. It doesn't say a statement in a document that is at least 20 years old. It doesn't say a statement of somebody with personal knowledge. It doesn't say a statement by the person who created the document. It embraces any statement within the document. The reasons for this are set forth in the commentary. This is the best we can do when documents are this old. If I wanted to come to court and say John Smith told me about an auto accident, your answer to me would be bring in John Smith. You can do better than that. When you talk about what happened in the 1930s, you can't do better. The answer to this is not exclusion of the evidence. The answer is argument. The jurors are smart. The ones I see are usually pretty smart. Everything Mr. Burke said, this guy had a motive, this guy was pointing fingers, that's what you argue to the jury. The rule makes it admissible. The only circuit decision is worth taking a look at. There's no quotation of the rule, nothing. It's just stated as a conclusion. You need to support every statement within a document. Did the government once concede that 805 applies? No, we addressed that in a footnote in our  There's also an accusation that we did it somewhere. The easy answer to this is this is admissible. When Judge Randell referred to an old book, again, that's what happens in these cases where you rely on documents. I go back to the case of the ship and the naval battle off the coast of France. The nature of this  requires us to consult historical documents and admitted into evidence pursuant to rule 803 16. As well as historical documents from 1870. Because it contains direct quotations from original sources and provides a contemporaneous view. My favorite being a quotation by  about this disputed issue. This is the first time I've done it. It's the first and only time I've been able to mention it. I bet you can't use Jefferson Davis. But that's the ancient document section. It talks about the creator of the document. So, a statement in a document, you don't need to have the creator of the document. We're not really anticipating that we're  have a statement that is by a person in a document. Let's say it's a letter that's 30 years old. And yet if the letter says something and it can be for the truth of the matter, you don't need to have that person who signed that letter. But if in the letter it says, oh, the    doesn't have to appear. I was speaking to John Jones the other day and he told me he killed his wife. That's different from what is anticipated by that exception, i.e., the creator of the document doesn't have to appear. It doesn't have to appear. I think you need to look at the plain language of the rule. And it comports with the understanding of the rule. I'm not saying this is perfect evidence, but it comes in and allows capable parties to argue with the jury. It doesn't allow them to impeach. It doesn't, but the jury understands that the evidence is worth whatever it is. I'm going to get back to why it wasn't as important in this case. This is not by any stretch of the imagination, the movie he described. You can read the record yourself. Mr. Tripp explained this because this was part of the basis of his opinion. This is what they do. They look at every coin. Mr. Tripp explained his opinion was based on the records of the myth. He tallied them down to the last point. Wayne Geiser did the same thing. Their expert agreed that mathematically everything in these documents lined up. They were just putting out theories. That is what his opinion was based on. What he was doing was looking at the records to see if there was any other explanation for how these coins left. Most importantly, the judge told this to the jury. This is a misstatement. He said there were only two corrective instructions. There are a number of corrective instructions. You will see how carefully judge Davis supervised this case. On page 2287 during this testimony, the judge said this gentleman is an expert witness. He is giving you the information he relied on. That is why we went through the secret service file. There were other statements like this. This is being appropriately used. Rule 703 explicitly says an expert can rely even on evidence if it is routinely used by experts in the field. What he is doing it for is not to say this is how we are proving our case. What he said it showed was there is no other explanation. That is not a hearsay purpose. That is not being offered for the truth. That is being offered to say we have these records. We know cash has gone in the same pattern. We know he admitted that he controlled these coins. He admitted selling nine coins. All the government is saying to the jury is we have done everything we can and it suggests no other explanation. The government does not need to prove there was a theft. That is what allows the forfeiture. It proved it with the mint records which showed every last one. That is what proved the case. Almost nothing was admitted as embedded hearsay. In the end they rely on one quote from the government closing argument where the attorney said what do you believe? The secret service or the tales they are coming up with. I would be very surprised to see a court reverse a judgment like this on the basis of a single line. If you read it in context she is comparing the expert. She is saying this expert relies on this and this expert is out there on the field talking about all of these theories. That is what the statement was. This court's precedent makes clear we don't reverse a verdict on the basis of one line that was not objected to. Assume for the moment that each level of hearsay within ancient documents requires a separate hearsay exception. Did the jury have sufficient admissible evidence to reach a verdict? Absolutely. The point I'm making is that we didn't rely on the embedded hearsay. We are not relying on who is pointing fingers at whom. We are showing the simple fact that there is no other explanation. No one ever came up with that. I hope I made that clear. It is not hearsay at all. Even if it is, the abundant evidence, the government's closing, the judge's opinion, everything is based on non-hearsay. The same is true with regard to the Barnard opinion. The judge gave an explicit statement limiting instruction. The same with arrest. The government was not relying on hearsay. It was a remarkable case that the government was able to prove 80 years after the fact because of the records. These are people who happen to be a certain age. I don't think any of them were even alive at that point. Certainly you can draw the inference. The judge drew the inference. She was part of intentionally concealing them. If you look at the facts, that is inescapable. We have a  where a family, I won't use the term inherent, but in that deposit box are some coins which may well be worth a great deal of money. The family has not done anything improper. They try to determine whether these coins are authentic. They will know whether or not we have fake coins, real coins, valuable coins. The lawyer says the best  find out these coins are valuable is to ask the government are these things legitimate. The government receives coins with a letter that says can you please take a look at these things and let us know if they are legitimate. The government cheeses the property and says thank you for giving us the property. Does that strike you as being heavy handed at all? The government does not have the final word. However, this plays out, if there is still a dispute, if they don't agree with the government, they file a claim. What it all comes down to in the end is whether you call the government heavy handed or not. The only thing that will matter is who has the burden of proof. If they have to file the claim, the government has the burden of proof. Judge Davis agreed with your question and he shifted the burden. He said you should not have acted this way. That was the remedy by the way. It was one of the remedies they suggested. To the extent that the government got the burden. If you find coins in your box, there is going to be a litigation. There is going to be a lawsuit appropriately set. Take one coin and say I just found this one coin. Then you know whether or not you have real coins. Is there a problem with the market? You do. What happened here was going to happen. There was litigation. One of the last points I can make is in the end their objections are harmless. They got what they asked for. They got a trial before a jury and they lost. Whether you are looking at the forfeiture claim or declaratory judgment, there is nothing to disturb. They got the remedy they would get. Let me say one more point to wrap up on the statute. I know you will look at that carefully. There are different sanctions on the government for violating those rules. First, the government has to give a notice within 60 days. Second, the government has to file a judicial action within 90 days. The remedy is if the government misses the notice, the remedy is that the government cannot continue with that judicial forfeiture. The government doesn't lose the remedy. However, if the government misses the 90-day limit, the remedy is different. The remedy is you cannot file any action at all. There is not going to be a forfeiture. They don't want that. If anything, you have the failure to give notice. Meaning, we can file a judicial action, which is exactly what Judge Davis had us do. They want the death penalty provision. Even then, all we lose under the statute is very much the remedy. If the government doesn't send the notice, then it returns the property. It does, but it can still initiate a judicial action. I don't think they would be rolling the coins down market street. The point I'm making is even if they're right, the government still has the remedy. Even if I'm wrong, all the government loses is the right to pursue forfeiture. The government does not lose its right as a property owner. That's what's different from the normal criminal forfeiture. Here we can always come and file that tort claim and that's what the judge and his discretion allowed us to do. You get back to the same place. There's going to be litigation. The government prevailed based on the evidence presented. That's  the government did. Thank you very much. Thank you. I have some things to say. I think they have not even been said. If I could, the government invokes article 4 for the very first time. It was never invoked down in the lower quarter. I don't think it applies. I don't think it applies. The parade of horribles has nothing to do with this case. I would like to be clear about what happened here. There can be no question. The government said in this case, we are keeping the property. We are not going to court. We are not having a judicial forfeiture. It is noticed that they are keeping the coins. The parade of horribles is that if the government survives, the entire intent of Congress is to say, it is not enough that the government when they violate a citizen's right, there has to be some punitive action. You have to say to prevent and discourage this sort of action. The government's argument is they could ignore the law. They did everything. They didn't want to go to court. That is exactly what Congress said. Because of the extraordinary civil forfeiture power, the government will have some limitation. They are not going to court. Citizens have rights. If the government violates those rights, they will be punished. The government says it is on technicalities because of the evidence. If I could get back to Judge Rendell, the question about notice. The only way to read this is when the government says what is different from the court. I am reminded of my teenagers when they say we cleaned our room and their actions reflect the exact opposite. Here the government's actions where they were keeping the property and only by saying it is not forfeiture, that can't be. The government knew the issue was called. There were three independent agencies. The U.S. attorney's office and the treasury office told them they had a judicial forfeiture. They disregarded that advice. The government says what happens when they are not aware of this problem going on. The government waited until the 87th day to act. They returned the notice and said we are not going to court. What they did was everything to avoid. They could ask to extend the 90 days. Would you address the issue of the evidence and whether it is harmless or not? Absolutely. The Skynet case never addresses hearsay within documents. That is the difference. It is not a technicality. They did not reject the argument. The judge's instructions to be clear, the judge admitted the hearsay evidence for the truth. The government admitted hundreds of pages of evidence. The judge did give a lengthy instruction but at the end of the case when he gave an instruction about what the jury could consider the evidence for there was no limitation. That only related to the Barnard case. Despite how the secret service were published to the jury, they were published and the government relied on them. We strongly believe that the jury verdict was the result of this compelling narrative. Would a new trial satisfy you? The principal remedy we seek is the return of the coins. The government chose not to file a declaratory judgment four years ago or in response to the claim. It would not judge. If your honors were not going to grant that, we do ask for a new trial without the ancient documents. We would submit that any declaratory judgment would be tried by a jury if allowed.